| | |
|---|---|
| SAMANTHA JANSSON, | Civil Action No. |
| Plaintiff, | No. 3:16-cv-260 (CSH) |
| v. | |
| STAMFORD HEALTH, INC. d/b/a STAMFORD HOSPITAL, STAMFORD HOSPITAL, STAMFORD ANESTHESIOLOGY SERVICES, P.C., VANTAGEPOINT LLC d/b/a VANTAGEPOINT HEALTHCARE ADVISORS, MICHAEL COADY, SHARON KIELY, SAL MANCINO and THERESA BOWLING, | MARCH 30, 2018 |
| Defendants. | |

## RULING ON PLAINTIFF'S THIRD MOTION TO AMEND COMPLAINT [DOC. 150]

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

Plaintiff Samantha Jansson brings this employment discrimination action, alleging that she was wrongfully terminated by her two former employers, Stamford Hospital  (including Stamford Health, Inc., doing business as Stamford Hospital) and Stamford Anesthesiology Services P.C. ("SAS").  The Court has recounted the facts of the case in its previous ruling, familiarity with which is assumed.  *See Jansson v. Stamford Health, Inc.*, No. 3:16-CV-260 (CSH), 2017 WL 1289824, at *1-3 (D. Conn. Apr. 5, 2017).

Pending before the Court is Plaintiff's third motion to amend the complaint. Doc. 150. Plaintiff's path to this request to amend is convoluted in that, upon entry of the Court's Ruling on her

1

previous motion to amend, she first failed to read the attached Ruling and filed an "Amended Complaint" containing claims and parties the Court had dismissed from the action. As Defendants noted in their Objection to the pending motion, "Plaintiff continued to include each and every one of the Dismissed Counts the Court had ordered removed from the Amended Complaint and also included all of the Dismissed Parties that the Court had ordered removed from the case." Doc. 155, at 5 (citing Doc. 139).

After Defendants' counsel demanded that Plaintiff stipulate to the dismissal of counts and parties in accordance with the Court's Ruling [Doc. 138], Plaintiff moved for an extension of time until May 12, 2017, to file a new Amended Complaint "in accordance with the Court's Order of April 5, 2017," due to the fact that "Plaintiff's lead counsel" was not fully aware of the parameters of the Court's Order when the Amended Complaint was filed on April 28, 2017."[1] Doc. 140.

Responding to Plaintiff's request to extend time, various defendants consented to the extension provided Plaintiff would file an Amended Complaint in compliance with the Court's order – *i.e.*, one that excluded the dismissed counts and parties. *See* Doc.141, 142, 145. Despite the Court's order in July 2016 that any amended complaint was to be filed "forthwith," Plaintiff intimated in her reply brief that she believed that she had the right to re-plead various causes of action that the Court had found deficient in her Proposed Amended Complaint. Doc. 143.

On May 4, 2017, although the Court granted Plaintiff's motion for extension of time, it directed her to file an amended complaint in the form directed by the applicable Ruling. Doc. 146. The Court specifically stated: "As to claims which the Court dismissed, Plaintiff has no permission

---

[1] The Court notes that only one attorney has entered an appearance on behalf of Plaintiff so this must be her "lead counsel."

to replead them at this time. Those counts were dismissed as failing to state viable claims, which were 'futile' pursuant to *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent permission to file a second Amended Complaint, a re-draft of her dismissed claims based on intervening discovery in this action is not permitted." Doc. 146.

Moreover, "in considering any such motion [to amend], in addition to the possibility of 'futility' of the claims, the Court must assess whether there is 'good cause' for the amendment because such a motion would fall outside the previously set deadlines to amend the Complaint (6/30/2016), pursuant to the Court's [38] *Scheduling Order*, as expanded for one amendment by [56] *Order*, granting leave to amend (7/15/2016))." *Id.* In so ordering, the Court stated that it would examine whether Plaintiff "has demonstrated diligence . . . and whether the amendment would not significantly prejudice [defendants]." *Id.*

Two weeks later, on May 12, 2017, Plaintiff filed yet another noncompliant amended complaint [Doc. 149], including the dismissed parties as defendants but setting forth no causes of action. Defendants' counsel then contacted Plaintiff's counsel to advise of Defendants' "intention to move to dismiss the facially invalid Amended Complaint," which resulted in Plaintiff filing a "Notice of Revised Amended Complaint." Doc. 152, 152-1. That Notice stated that her May 12, 2017 Amended Complaint—filed to "correct" the non-compliant April 28, 2017 Amended Complaint – was inadvertently filed without any causes of action included. Four days later, on May 30, 2017, Plaintiff filed a "Revised" Amended Complaint," which is now the operative complaint in this action. Doc. 153.

On May 12, 2017, prior to filing the Revised Amended Complaint, Plaintiff filed the current motion requesting leave to amend her previous, deficient Amended Complaint [Doc. 149], with a

seventy-page, fifteen count "Proposed Second Amended Complaint." Doc. 150.

After more than 15 months of litigation and the Court's sixty-page Ruling delineating which counts failed to state a claim, Plaintiff now seeks to replace the operative Revised Amended Complaint [Doc. 153] with this new pleading. Her "new" claims include the following: retaliation and interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617, against Stamford Hospital (Count Nine); claims for aiding and abetting under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(5), against VantagePoint LLC, Michael Coady, Salvatore Mancino, Theresa Bowling, and Stamford Hospital (Counts Ten to Fourteen); and interference under Title VII against Stamford Hospital (Count Fifteen).[2]

These additional claims include claims against defendants whom the Court dismissed from the action, directing the Clerk to terminate them upon the filing of a compliant amended complaint. Moreover, these claims encompass claims that were dismissed "for failure to state a claim" in that Ruling as well.[3]

---

[2] In her motion to amend, Plaintiff argues to justify adding dismissed claims back into the Complaint by stating that she will "clarify" the claims by adding facts to support them. She also seeks to now add an interference claim under the FMLA against Stamford Hospital.

[3] *See Jansson*, 2017 WL 1289824, at *29, stating:

[B]ecause Plaintiff's proposed claims against defendants **VantagePoint, LLC, Michael Coady, Sharon Kiely, Sal Mancino,** and **Theresa Bowling** fail to state plausible claims, these defendants will be effectively dismissed from the action upon the filing of the Amended Complaint, which will not include these claims. The Clerk is directed to terminate these defendants as parties upon Plaintiff's filing of the Amended Complaint.

The Clerk failed to terminate the named defendants because the compliant Revised Amended Complaint [Doc. 153] was not filed until Plaintiff had already filed the present, third motion to amend [Doc. 150], seeking to keep all but one of these parties in the action.

Needless to say, the manner in which Plaintiff has filed her various amended complaints has led to chaos and confusion among the parties, including which parties will remain in the case and which causes of action will go forward or be necessarily eliminated for failing to state a claim. This Ruling resolves Plaintiff's third motion to amend *with finality* to end the confusion regarding Plaintiff's claims so that the case may proceed.

## II. DISCUSSION

### A. Rule 15(a) and the *Foman* Standard

A party may only amend its pleading once as a matter of course within 21 days after serving it.[4] Plaintiff's present motion to amend is her "third" such motion and is thus governed by Rule 15(a)(2), Fed. R. Civ. P., which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires."[5] Plaintiff's motion to amend is energetically opposed by Defendants so she has no written consent from the opposing parties to amend. She must, therefore, seek the Court's leave.

---

[4] Rule 15(a), Fed. R. Civ. P., provides:

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

[5] With respect to amendments other than those which may be made a matter of course, Rule 15(a)(2), Fed. R. Civ. P., provides:

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court articulated the relevant standard for a court to determine whether to grant a party's request to amend his or her pleading under Federal Civil Rule 15(a). In particular, the *Foman* court stated: "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" 371 U.S. at 182. "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

The Second Circuit consistently applies *Foman* in favor of motions to amend. *See, e.g., Knife Rights, Inc. v. Vance,* 802 F.3d 377, 389 (2d Cir. 2015) (Rule 15(a)(2) "affords district courts considerable discretion to deny amendment when there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'") (quoting *Foman*, 371 U.S. at 182); *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 109 (2d Cir. 2014) ("The Federal Rules provide that courts 'should freely give leave [to amend] when justice so requires'" and "[i]n the absence of any apparent or declared reason . . . such as undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . the leave sought should, as the rules require, be 'freely given.'") (quoting *Foman,* 371 U.S. at 182); *Grullon v. City of New Haven*, 720

F.3d 133, 139 (2d Cir. 2013) ("When a party requests leave to amend his complaint, permission generally should be freely granted.") (citing *Foman*, 371 U.S. at 182); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").

## B.  Undue Prejudice

As this Court has previously stated, "[i]nstructed by *Foman*, federal trial courts are lenient in allowing amendments to pleadings, but they are not supine. If the party opposing amendment demonstrates the presence of one or more of the negative factors listed in *Foman*, the amendment will not be allowed, for in that circumstance the cause of justice would not be served." *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 285 (D.Conn. 2017)

Applying the *Foman* standard to Plaintiff's third motion to amend, the Court finds that it must exercise its discretion to determine whether it should review the motion to amend on the merits or deny it in whole cloth to prevent "undue prejudice" to the non-moving parties.  Plaintiff has shown no blatant bad faith so the Court assesses the possibility of "undue delay" in filing a third motion to amend.

Although undue delay in bringing a motion to amend is one of the *Foman* factors, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). *See also Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases); *Middle Atl. Utils. Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968). "Delay must be considered in context; not all delay will result in denial of a motion to amend."

*Oneida Indian Nation of New York State v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 74 (N.D.N.Y. 2000).

"Obviously, '[u]ndue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)). "Nonetheless, allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Id.* (citation and internal quotation marks omitted). "[T]he fact that the opposing party will have to undertake additional discovery, 'standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" *Christians of California, Inc. v. Clive Christian New York, LLP*, No. 13 CIV. 0275 (KBF) (JCF), 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (quoting *United States ex. Rel. Maritime Administration v. Continental Illinois National Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir.1989)).

In the case at bar, Plaintiff has represented to the Court that "[f]or approximately the past nine months, the parties have proceeded with discovery on all of the claims alleged in the original complaint and the proposed amended complaint." Doc. 150-1, at 5. She has further stated that "[d]iscovery is ongoing" and the "parties have exchanged documents." *Id.* It is out of this ongoing discovery that Plaintiff has gathered the additional facts she seeks to insert in her proposed amended complaint to support the additional claims. Plaintiff also states that the "key actors for the institutional clients would be deposed irrespective of their status as individual defendants" so that amendment at this time "will not result in any expansion of discovery." *Id.*

No dispositive motion is pending and the parties "are working together to create a proposed amended [Rule] 26(f) scheduling order." *Id.*, at 6. Under these circumstances, Plaintiff suggests that

there is no "undue delay" with respect to her proposed amendment.

The Court must therefore examine "undue prejudice," as claimed by the Defendants in this action. The Second Circuit has stated:

> In determining what constitutes "prejudice," we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

*Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

In the case at bar, the present motion has required Defendants to expend additional resources in opposing Plaintiff's repeated motions to amend; and discovery has been ongoing on all potential claims. The constant skirmishing over which complaint is operative – given the Plaintiff's repeated failure to file a compliant complaint following the Court's prior Ruling, granting in part and denying in part, her second motion to amend – has also drawn out the dispute in this matter.

Moreover, Plaintiff's third motion to amend was filed almost a year after her first motion to amend [Doc. 48, filed June 29, 2016], two months after the Court last ruled on her second motion to amend [Doc. 138, filed April 5, 2017], and more than two years into these proceedings, which commenced by removal on February 17, 2016. The fact that Plaintiff has been given previous opportunities to amend militates against allowing additional such opportunities.

On the other hand, Plaintiff has not intentionally repeatedly failed to cure deficiencies by amendments previously allowed. Her present motion to amend – albeit her third – was filed because she claims she has diligently extracted sufficient facts during discovery to make out her claims. It is on this basis that she attempts to re-insert them in expanded form. Although serial filing of motions to amend may create "undue prejudice" to defendants in certain circumstances, this case

9

remains in the discovery phase and the parties are now in the process of deciding what case deadlines they will propose in a joint Rule 26(f) Report.[6]

Upon due consideration of the facts presented regarding "undue prejudice," the Court finds that it is in the interests of justice to consider the motion on its merits. The fact that Defendants may have to undertake additional discovery is not sufficient to constitute "undue prejudice" and deny consideration of this motion to amend where Plaintiff has obtained new facts during discovery which give rise to her proposed amendments. Moreover, discovery is not completed and there have been no summary judgment motions filed. *See, e.g., State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 855-56 (2d Cir. 1981) (three-year delay did not bar amendment where no trial date had been set and

---

[6] Throughout their objections to the motion to amend, the Defendants argue that Plaintiff's motion was filed after the deadline for amendment, in violation of the scheduling order. They thus assert that Rule 16(b)(4), Fed. R. Civ. P., dictates that Plaintiff must show "good cause" for modification of the schedule. However, the Court had not yet set the case deadlines, anticipating that the parties would file their Rule 26(f) Report upon the Court's resolution of the present motion. *See* Doc. 151 ("Order," granting the parties' joint motion to extend the time to file parties' Rule 26(f) Report, stating "the parties may file their joint revised Rule 26(f) Report on or before June 30, 2017, or within fourteen (14) days after the Court rules on Plaintiff's [150] Motion to Amend/Correct, *whichever is later*.") (emphasis added).

Furthermore, "good cause" to modify a set schedule while seeking amendment of pleadings may include the revelation of additional facts upon discovery. *See, e.g., Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 385 (D. Conn. 2008) (holding that plaintiff's assertion "that it only recently became aware of the facts . . . which give rise to its newly raised allegations" was a "satisfactory explanation" so that, under the circumstances, "the seven -month delay is not long enough to justify denying [plaintiff's] request for leave to amend"); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 CIV. 6430 VM JCF, 2008 WL 113672, at *4 (S.D.N.Y. Jan. 10, 2008), *report and recommendation adopted sub nom. Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408 (S.D.N.Y. 2008) (In filing its motion to amend after learning new facts in discovery, "Bridgeport has demonstrated that it was sufficiently diligent in moving to amend to satisfy the good cause requirement of Rule 16."). *See also Friedl v. City of New York*, 210 F.3d 79, 88 (2d Cir. 2000) (amendment allowed after discovery revealed additional relevant facts); *Securities and Exchange Commission v. PCI Telecommunications, Inc.*, 207 F.R.D. 32, 34-35 (S.D.N.Y.2002) (plaintiff allowed to amend where it obtained discovery supporting amendment four months before motion).

no motion for summary judgment had been filed by defendants); *Olaf Soot Design, LLC v. Daktronics, Inc.*, No. 15 CIV. 5024 (RWS), 2017 WL 4861994, at *3 (S.D.N.Y. Oct. 26, 2017) ("Courts are more likely 'to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment.'") (quoting *Werking v. Andrews*, 526 Fed.Appx. 94, 96 (2d Cir. 2013)). This is clearly not a case "on the eve of trial," where Defendants might face problems of proof. *See, e.g.*, *Bradick v. Israel*, 377 F.3d 262, 263 (2d Cir. 1967) (per curiam), *cert. denied*, 389 U.S. 858 (1967).

However, due to the previous procedural chaos regarding Plaintiff's filings, the Court takes the following measure to prevent further delay. In the interest of justice, in resolving Plaintiff's present motion, the Court states definitively that *the period to amend will close with this Ruling*. In so holding, the Court wishes to prevent unlimited attempts by Plaintiff to amend, multiple rounds of briefing regarding amendment, protracted initial stages of this litigation, and confusion as to the relevant issues for discovery. Upon conclusion of this Ruling, with input from the parties, the Court will establish firm, viable case deadlines for the remainder of this matter.

Exercising leniency as to this *final* request to amend, the Court will now review Plaintiff's added factual allegations in the complaint to determine whether they actually clarify and sufficiently enhance her claims or whether the new claims are futile, or subject to dismissal for failure to state a claim.

## C.  Potential Futility

With respect to futility, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citing *Foman*, 371 U.S. at 182). *See also Health–Chem*

*Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied."); *Albany Ins. Co. v. Esses*, 831 F.2d 41, 45 (2d Cir. 1987) ("[T]he district court may deny leave to replead if the proposed amendments would be futile.").

In general, leave to amend must be freely given. However, denial is proper where the proposed amendment would be "futile," *Foman*, 371 U.S. at 182, so that the amended pleading fails to state a claim or would be subject to dismissal on some other basis,, *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002 ). *See also Donovan v. Am. Skandia Life Assur. Corp.*, 217 F.R.D. 325, 325 (S.D.N.Y. 2003) ("Where a proposed amended complaint cannot itself survive a motion to dismiss, leave to amend would be futile and may clearly be denied."), *aff'd*, 96 F. App'x 779 (2d Cir. 2004); *Bentley v. Greensky Trade Credit*, *LLC*, No. 3:14-CV-1157 (VAB), 2015 WL 9581730, at *2 (D.Conn. Dec. 30, 2015) ("[A] Court may deny leave to amend if the proposed amendment would be futile because it fails to state a claim that would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."), *reconsideration denied sub nom.*, *Bentley v. Tri State of Branford, LLC*, No. 3:14-CV-1157 (VAB), 2016 WL 2626805 (D. Conn. May 6, 2016). *See also Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 249 (D.Conn. Dec. 1, 2014) (collecting cases).[7]

A claim is futile if it lacks the facts necessary to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

---

[7] The United States Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

U.S. 544, 570 (2007)). In deciding whether to dismiss for failure to state a claim, a court must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). Although a complaint need not contain "detailed factual allegations," it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Put simply, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64 (citing *Twombly*, 550 U.S. at 556).

D.     **Plaintiff's Proposed "New" Claims**

In assessing Plaintiff's proposed claims for potential futility, the Court has previously examined these claims, which now contain additional and newly designated paragraphs of factual allegations. The Court reviews these claims to determine whether, with the additional facts presented, they state a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

1.      **Count Nine - Violation of FMLA - Retaliation  - Stamford Hospital**

     a.      **Standard of Law**

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.,  provides employees with distinct rights to take leave under certain medical circumstances.  First, it "generally requires covered employers to grant employees who have worked for twelve months (or 1250 hours in twelve months) up to twelve weeks'  leave during any twelve month period for, *inter alia*, a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  *Hale v. Mann*, 219 F.3d 61, 68 (2d Cir. 2000) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA also allows an eligible employee to take "a total of 12 workweeks of leave during  any 12-month period  . . . [i]n order to care for . . . a son [or] daughter . . . of the employee, if such . . . son [or] daughter . . . has a serious health condition . . . ."[8] 29 U.S.C. § 2612(a)(1)(C).  Second, the FMLA "protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking of leave pursuant to the FMLA." *Hale*, 219  F.3d at 68 (citing 29 U.S.C. § 2614(a)(1)).

"To prove interference with either of these rights, a plaintiff must establish five elements: (1) that [he] is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that [he] was entitled to leave under the FMLA; (4) that [he] gave notice to the defendant of [his] intention to take leave and (5) that [he] was denied benefits to which [he] was entitled under FMLA." *Robertson v. Amtrak/Nat'l R.R. Passenger Corp*., 400 F. Supp. 2d 612, 626 (S.D.N.Y. 2005) (quoting *Geromanos v. Columbia Univ.*,322 F. Supp. 2d 420, 427 (S.D.N.Y.

_____

          [8]    Under the FMLA, the term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care" in a medical facility or "continuing treatment by a health care provider."  29 U.S.C. § 2611 (11)(A)-(B).

2004)).

Alternatively, if one brings a retaliation claim, alleging that an employer has retaliated for an employee's exercise of FMLA rights, the Second Circuit employs the *McDonnell Douglas* burden-shifting analysis.[9] *See Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004) *(per curiam)* ("it would be appropriate to apply the *McDonnell Douglas* analysis to claims of retaliation – where the employer's intent is material – but not to assertions of interference – where the question is simply whether the employer in some manner impeded the employee's exercise of his or her right") (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)).

Specifically, to plead an FMLA retaliation claim, one must establish: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168. *See also Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (applying FMLA retaliation elements set forth in *Potenza*).[10]

_____

[9] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[10] If the plaintiff successfully meets the initial burden of alleging the four elements, the burden shifts back to the employer to state a legitimate non-discriminatory reason for its action. Then, if the defendant is able to provide such a reason, the burden returns to the plaintiff to prove that the defendant's articulated reason for its action is "pretextual" so that the only real reason was retaliation for plaintiff's exercise of rights protected under the FMLA. *See, e.g., Stevens v. Coach U.S.A.*, 386 F. Supp. 2d 55, 61 (D. Conn. 2005); *Kuo v. Computer Assocs. Int'l, Inc.*, No. 05-CV-3295 (DRH) (JO), 2007 WL 2874845, at *5 (E.D.N.Y. Sept. 27, 2007).

### b. **Plaintiff's Claim**

In Count Nine of her proposed Second Amended Complaint, Plaintiff once again attempts to set forth a claim against Defendant Stamford Hospital for retaliation with respect to her rights under the FMLA. In that claim, she alleges that Stamford Hospital "retaliated against [her] for taking a medical leave of one day to care for her daughter during an ongoing neurological episode" and such "conduct was willful." Doc. 150-2, at 42 (¶ 82). She states that "[a]s a result of Defendant's conduct, Plaintiff became fearful of taking any additional time off due to the serious health issue her daughter confronted and, as a result, did not do so." *Id.*, at 43 (¶ 83). Moreover, "Stamford Hospital's HR department did not acknowledge or address the retaliatory conduct by Coady," which constituted "a violation of the FMLA." *Id.*, (¶ 85)

Also, in this FMLA Count, Plaintiff "incorporates by reference" the first 25 paragraphs contained in the "Introduction," "Jurisdiction," and "Statement of Claims" sections preceding her actual claims. *Id.*, at 42 (¶¶ 1-25). Although general allegations do not suffice, Plaintiff's allegations in two particular portions of her complaint, entitled "Plaintiff's FMLA Leave" and "Retaliation for Taking a Day Off," clearly address this FMLA claim. *Id.*, at 26-30 (¶¶ 114-27). The Court will therefore review these paragraphs in reference to this claim.

With respect to "FMLA Leave," Plaintiff alleges that on August 16 and 17, 2014, she had spent time with her daughter when she was "emergently admitted to Stamford Hospital" due to "focal seizure activity." Doc. 150-2, at 26 (¶ 114). The next morning, Monday, August 18, 2014, Plaintiff alleges that she worked *Id.* (¶ 115). Then, "[i]n order to be with her daughter while she was undergoing this unusual medical situation and because of her own emotional and physical exhaustion, Plaintiff took a medical leave on Tuesday, August 19, 2014," which was "the first

unscheduled day Plaintiff had taken off in the entirety of her eight years fo employment with Stamford Hospital." *Id.*, at 26-27 (¶¶ 115-17). In particular, at 5 a.m. on August 19, 2014, Plaintiff phoned the hospital and spoke to the in-house anesthesiologist Richard Margolis, and "advised him that she was not well enough to come to work." *Id.*, at 27 (¶ 116). Plaintiff alleged that Dr. Margolis told her that Dr. Amy Crane, another anesthesiologist, would cover for her, which she did. *Id.* Moreover, Plaintiff alleges that she returned to work the following day, Wednesday, August 20, 2014. *Id.* (¶ 118). Plaintiff's total absence was one shift and was, in her words, because "she was not well enough to come to work." *Id.* (¶ 116.)

In this latest attempt to amend, Plaintiff has now included additional facts regarding the severity of her daughter's medical condition and allegations that Coady was "one of Plaintiff's supervisors" and "was fully aware that Plaintiff's daughter's medical emergency." *Id.*, at 28 (¶ 119). Although such newly pleaded facts may suggest that Coady behaved unkindly toward Plaintiff with regard to her absence, the Court nonetheless adheres to its earlier decision that Plaintiff failed to plead a plausible claim for retaliation in violation of the FMLA.

As the Court previously stated, Plaintiff has failed to allege facts to show that she fulfilled the notice requirement under the FMLA – to provide her employer, Stamford Hospital, with proper notice of her need for FMLA leave. In its 2009 regulations, the United States Department of Labor addressed the required content of such notice. *See* 29 C.F.R. § 825.303 ("Employee notice requirements for unforeseeable FMLA leave"). Under those regulations, if the need for the leave was unforeseeable – such as a sudden illness of a family member, "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303 (b) ("Content of notice"). Moreover, "if the leave is for a family

member," the notice must state "that the condition renders the family member unable to perform daily activities." If this is a first-time request for FMLA leave, the employee need not "mention the FMLA;" however, "calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." *Id.*

In the case at bar, Plaintiff once again alleges that she essentially called in a one-day absence by calling Dr. Margolis. She "advised him that she was not well enough to come to work." Doc. 150-2, at 27 (¶ 116). There was no indication that she mentioned a need for FMLA leave, specified a leave period, or that she gave sufficient factual information about her daughter's illness for an employer to infer that "the FMLA may apply to th[is] leave request." *Id.* She thus never gave Stamford Hospital notice that this day off, or the facts precipitating it, suggested a need for FMLA leave. Plaintiff states that she returned to work the next day, on Wednesday, August 20, 2014. *Id.*, (¶ 118).

Simply calling in for one day of "medical leave" does not trigger the FMLA's protection. An employee must give the employer sufficient notice of the need for *FMLA* leave. *See, e.g., Basso v. Potter*, 596 F. Supp. 2d 324, 338 (D. Conn. 2009) ("[T]he FMLA does not require an employer to be clairvoyant.") (internal citations and quotations omitted). *See also Festerman v. Cnty. of Wayne*, 611 F. App'x 310, 315 (6th Cir. 2015) ("merely 'calling in sick' is insufficient to trigger any obligation of the employer under the FMLA"); *Brown v. Kansas City Freightliner Sales, Inc.*, 617 F.3d 995, 997-98 (8th Cir. 2010) (plaintiff's calling in sick and stating that she would not be reporting to work did not trigger employer's obligations under the FMLA), *cert. den.*, 562 U.S. 1217 (2011) ; *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) ("Calling in sick without providing additional information does not provide sufficient notice under the FMLA").

Plaintiff's statement that "she was not well enough to come to work" does not suggest she was seeking FMLA leave to care for a sick relative. That communication was insufficient to differentiate the absence from an ordinary sick day so did not trigger Stamford Hospital's obligations under the FMLA.

Also, regarding notice, Plaintiff's allegations regarding the morning of August 19, 2014, do not suggest that she conveyed her request for a one-day absence to a supervisory or administrative official at Stamford Hospital. Instead, she phoned an in-house anesthesiologist, Dr. Margolis, who called another anesthesiologist, Dr. Crane, to cover for her. Doc. 150-2, at 27 (¶ 116). In light of Plaintiff's position as "Director of Cardiac Anesthesiology," *id.*, at 4 (¶¶ 16-17), it is likely that these anesthesiologists were her subordinates. Thus, even if her request for a sick day had indicated a need for FMLA leave, that request was not officially conveyed to create notice to Stamford Hospital.

Furthermore, even if Plaintiff had otherwise pled a proper case for FMLA retaliation regarding notice, she failed to allege facts to suggest that either her condition or the illness of her daughter fulfilled the requirements for a "serious health condition" under the FMLA. Under the FMLA, the term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care" in a medical facility or "continuing treatment by a health care provider." 29 U.S.C. § 2611 (11)(A)-(B). *See also* 29 C.F.R. § 825.113. In her Complaint, Plaintiff now alleges that her daughter had "a serious neurological *episode*." Doc. 150-2, at 28 (¶ 118) (emphasis added). An episode suggests a temporary event, of limited duration. Moreover, Plaintiff alleges that although her daughter "was emergently admitted to Stamford Hospital on Saturday evening, August 16, 2014, for stabilization and diagnostic test performance,"

*id.*, at 26 (¶ 114), she was released from Stamford Hospital the following evening, Sunday, August 17, 2014, *id.* Plaintiff fails to clarify whether her daughter actually ended up needing continuing treatment from a health provider. *Id.* Rather, she says Stamford Hospital physicians suggested that she consult with Columbia or some other higher level facility to address the "structural abnormalities of the MRI." *Id.* Plaintiff never states what follow-up treatment, if any, her daughter actually sought or received. In sum, Plaintiff failed to provide a specific diagnosis, length of illness, or history of medical care to support a claim under the FMLA.

In addition, Plaintiff does not allege that she herself required "inpatient treatment" or "continuing treatment by a health provider." Simply stating that "she was not well enough to come to work" was insufficient to allege a "serious health condition" under the FMLA.

In sum, Plaintiff simply alleges that she called in for one day of medical leave in order to be with her daughter while she underwent a medical episode and "because of her own emotional and physical exhaustion." Doc. 150-2, at 27 (¶ 115). Such allegations are too vague to suggest that FMLA leave was applicable to her day off. "[B]ecause FMLA leave applies only to a 'serious health condition' or 'chronic serious health condition' as defined under 29 C.F.R. § 825.114," an employee's reference to not being well for one day " 'does not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable.'" *Basso*, 596 F. Supp. 2d at 338-39 (quoting *Phillips v. Quebecor World Rai Inc.,* 450 F.3d 308, 312 (7th Cir. 2006)).

Because Plaintiff's allegations once again fail to show that she exercised rights protected under the FMLA, she has failed to plead a plausible retaliation claim under the FMLA. Plaintiff's Count Nine for violation of the FMLA remains futile.

## 2. Counts Ten to Fourteen - Aiding and Abetting under the CFEPA

### a. Standard of Law

Plaintiff once again seeks to add claims under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51, *et seq*. In addition to the statute's prohibition of an employer's discriminatory practices based on sex, "[u]nder the CFEPA it is [also] a prohibited practice for an employer – except in the case of a bona fide occupational qualification or need – to refuse to hire or employ or to discharge from employment an individual because of the individual's physical disability."[11] *Beason v. United Techs. Corp*., 337 F.3d 271, 276-77 (2d Cir. 2003) (citing Conn. Gen.Stat. § 46a–60(a)(1)). The CFEPA defines the term "[p]hysically disabled" as "refer [ring] to any individual who has any chronic physical handicap, infirmity or impairment." Conn. Gen. Stat. § 46a–51(15).

Unlike claims under the ADA, the Second Circuit has held that the CFEPA lacks the significant restrictive threshold that the physical disability in question "substantially limit a major life activity." *Beason*, 337 F.3d at 277. Therefore, "Connecticut and federal laws do not provide coextensive disability discrimination coverage." *Id*. Moreover, "[c]laims under the CFEPA are analyzed using the same burden shifting framework set forth by the Supreme Court in *McDonnell*

---

[11] The CFEPA states, in relevant part to this action:

It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . or physical disability . . . .

Conn. Gen. Stat. § 46a-60(a)(1).

*Douglas* for use in Title VII, ADA, and ADEA cases." *Berube v. Great Atl. & Pac. Tea Co.*, No. 3:06-CV-00197 (VLB), 2010 WL 3021522, at *9 (D. Conn. July 29, 2010). *See also DeAngelo v. Yellowbook, Inc.*, 105 F. Supp. 3d 166, 180 (D. Conn. 2015) (same); *Hopkins v. New England Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 256 (D. Conn. 2013) ("The only relevant difference between the analysis a court undertakes in regards to ADA and CFEPA claims is in defining physical disability" because "CFEPA's definition of physical disability is broader than the ADA's") (citing *Beason*, 337 F.3d at 277-278).

Also, Conn. Gen. Stat. § 46(a)(60)(a)(5) provides:   "(a) It shall be a discriminatory practice in violation of this section: (5) For any person, whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or attempt to do so."  Therefore, "a plaintiff may seek recovery from individual . . . employees for illegally aiding and abetting discrimination against him, should he choose to file an independent lawsuit or to join those parties as defendants to [his or her] action." *Cintron v. Atticus Bakery, LLC*, 242 F. Supp. 3d 94, 107 (D. Conn. 2017) (quoting *Farrar v. Town Of Stratford*, 537 F. Supp. 2d 332, 356 (D. Conn. 2008)).  *See also, e.g.*, *Spiotti v. Town of Wolcott*, No. 3:04-cv-01442 (CFD), 2008 WL 596175, at *1 n. 1 (D.Conn. Feb. 20, 2008) ("Individual liability remains possible under Conn. Gen. Stat. § 46a-60(a)(5) (aiding and abetting) . . ."); *Edwards v. New Opportunities Inc.*, No. 3:05-cv-1238 (JCH), 2006 WL 1668020, at *2 (D. Conn. June 16, 2006) ("[I]ndividual defendants, even if not employers, may be liable for violations of Connecticut General Statutes section[ ] 46a-60(a)(5).").

**b.       Plaintiff's Claims**

In Counts Ten through Fourteen, Plaintiff attempts to set forth claims for "aiding and

abetting" Stamford Hospital's and SAS's discrimination against her on the basis of sex and physical disabilities, in violation of the CFEPA. In support of these claims, Plaintiff has alleged acts of discrimination, retaliation and ultimately discharge. The three physical disabilities she describes – severe mid-foot arthritis, permanent partial hearing loss, and elevated radiation level – are physical handicaps, infirmities, and impairments. Conn. Gen. Stat. § 46a-51(15). Unlike the ADA, the CFEPA lacks a requirement that a disability "substantially limit a major life activity." Therefore, all three of Plaintiff's alleged handicaps, impairments, or disabilities qualify under the CFEPA.

The "aiding and abetting" claims in Plaintiff's Counts Ten to Fourteen are made against VantagePoint; individuals Coady, Kiely, Mancino, and Bowling; and Stamford Hospital itself. She asserts that each such defendant "aided and abetted" her employer in discriminating against her in violation of the CFEPA. The Court now examines whether she has provided sufficient particularized facts to support these claims.

### 1.    Count Ten - VantagePoint

In Count Ten, Plaintiff alleges "aiding and abetting" by VantagePoint, a Connecticut limited liability company "involved in providing HR and management services to SAS and Stamford Hospital." Doc. 150-2, at 2-3 (¶ 9). Plaintiff asserts that VantagePoint "partnered with Defendant SAS and Defendant Stamford Hospital in the discriminatory and retaliatory actions taken against Plaintiff." *Id.*, at 43 (¶ 101). Also, "[t]he representatives of all three entities worked together toward the common goal of harassing Plaintiff and ridding her from her employment." *Id.*

Plaintiff brings this claim for "aiding and abetting" pursuant to Conn. Gen. Stat. § 46a-60(a)(5), which states: "It shall be a discriminatory practice in violation of this section: ... For any *person*, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the

doing of any act declared to be a discriminatory employment practice or to attempt to do so." (Emphasis added). As a limited liability company, VantagePoint is not an individual or "person." "Case law interpreting this statute raises no question as to the applicability of this provision of the CFEPA to individuals." *Schaefer v. Gen. Elec. Co.*, No. 3:07-CV-858PCD, 2008 WL 2001244, at *3 (D. Conn. May 8, 2008) (collecting cases). *See also Farrar v. Town Of Stratford*, 537 F. Supp. 2d 332, 356 (D. Conn. 2008) ("Thus, a plaintiff may seek recovery from *individual . . . employees* for illegally aiding and abetting discrimination against him, should he choose to file an independent lawsuit or to join those parties as defendants to this action.") (citing Conn. Gen. Stat. § 46a-60(a)(5)) (emphasis added).[12]

There is no case law, however, to suggest that this provision applies to corporate entities. Rather, courts have distinguished between § 46a-60(a)(1) and § 46a-60(a)(5), noting that the former "does not impose liability on individual employees," *Perodeau v. City of Hartford*, 259 Conn. 729, 737 (2002), whereas the latter expressly "refers to 'persons'", *id.* at 737-38. *Accord Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-CV-788 VLB, 2013 WL 1092907, at *9 (D. Conn. Mar. 15, 2013).[13]

---

[12] Although a plaintiff may pursue a corporate entity under Conn. Gen. Stat. § 46a-60(a)(1), that section pertains to discriminatory actions by an "employer" and Plaintiff does not allege that VantagePoint was her employer. *See, e.g., Lenoble v. Best Temps, Inc.*, 352 F. Supp. 2d 237, 246 (D. Conn. 2005) (dismissing CFEPA claim on summary judgment where corporate entity defendant was not plaintiff's joint "employer").

[13] Commentators have noted this distinction between § 46a-60(a)(1) and § 46a-60(a)(5), as follows:

Perhaps the most salient aspect of CFEPA's aiding and abetting provision is that it applies to individuals as well as employers. Whereas only employers are covered under C.G.S.A. § 46a-60(a)(1), CPEPA's § 46a-60(a)(5) aiding and abetting provision applies to "any person, whether an employer or an employee or not."

As multiple courts in Connecticut and this District have interpreted, the meaning of "person" in § 46a-60(a)(5) is plain, including *individuals* who aid or abet the plaintiff's employer in discrimination.[14] *See, e.g., Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-CV-788 (VLB), 2013 WL 1092907, at *9 (D. Conn. Mar. 15, 2013); *Wasik v. Stevens Lincoln-Mercury, Inc.*, No. CIV. 3:98CV1083 (DJS), 2000 WL 306048, at *7 (D. Conn. Mar. 20, 2000); *Cullen v. Putnam Savings Bank, Inc.*, No. 3:96CV2315(AHN), 1997 WL 280502, at *5 (D.Conn. May 17, 1997). "[T]he plain meaning of a statute is normally controlling, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Bolick v. Alea Grp. Holdings*, Ltd., 278 F. Supp. 2d 278, 282 (D. Conn. 2003) (citation omitted). "It is a basic rule of statutory construction that when the legislature had an opportunity to include a class of entities in its prohibition against certain acts, but did not do so, the legislature intended, by omission, not to include such class." *Wasik*, 2000 WL 306048, at *6. The legislature made no provision for "aiding and abetting" by corporate entities in § 46a-60(a)(5). Accordingly, Plaintiff's Count Ten as to VantagePoint fails to state a valid claim.[15]

Courts hold that according to statutory construction, where the persons clause is omitted from § 46a-60(a)(1) but included in § 46a-60(a)(5), the legislature intended to expose *individuals* to liability *under § 46a-60(a)(5)* but not under § 46a-60(a)(1).

§ 7:15, "Aiding and Abetting," 14 Conn. Prac., Employment Law § 7:15 (emphasis added).

[14] *See also Bolick v. Alea Grp. Holdings, Ltd.*, 278 F. Supp. 2d 278, 282 (D. Conn. 2003) ("The dictionary defines 'abettor' as *a person* who abets (incites or encourages) an offender.") (citing *The New Shorter Oxford English Dictionary* 4 (Lesley Brown, ed., Oxford Univ. Press 1993) (emphasis added).

[15] Even were the Court to defy logic to interpret § 46a-60(a)(5) as including a corporate entity as "a person," Plaintiff's allegations in this Count are unduly vague in that there is no factual basis for this Court to determine which employee, if any, was authorized to act on behalf of non-employer VantagePoint, such that subjecting it to liability for that person's actions would be

## 2.   **Count Eleven - Michael Coady**

In Count Eleven, Plaintiff includes a claim that her supervisor, Michael Coady, Chief of Cardiac Surgery at Stamford Hospital, "aided and abetted" discrimination by Stamford Hospital and SAS against her due to her disabilities and sex in violation of the CFEPA.  She explains that he was the instigator of various discriminatory measures against her (*e.g.*, assigning her permanently to the Cardiac Catheterization Lab).  Doc. 150-2, at 55 (¶ 72).  Plaintiff recounts numerous offensive incidents regarding Coady and other female employees and alleges that since his arrival at Stamford Hospital, she has "watched him engage in a pattern and practice of harassment, discrimination, and retaliation against women."  *Id.*, at 16 (¶ 70).   Plaintiff raised concerns with Coady about his harassing and inappropriate conduct; and two days later, on March 7, 2014, he sent an email, copying Bowling of SAS, to falsely accuse Plaintiff of "routinely using her phone during surgical procedures and not being properly engaged."  *Id.*, at 17 (¶ 66).   Plaintiff asserts that "Defendant Coady made the March 7 accusations regarding Plaintiff due to his own discriminatory animus and to assist Stamford Hospital and SAS [to] build a case for termination against Plaintiff." *Id.*, at 54 (¶ 67).  She concludes that "[i]t was clear that Coady was partnering with Bowling [of SAS] to effectuate [her] termination." *Id.*, (¶ 68).

Reading the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately pled sufficient facts to allege that Coady's offensive behavior was taken in aid of discriminatory conduct by her employers.

---

warranted.  Plaintiff names various VantagePoint employees, such as Sue Prior and Benjamin Albert, throughout her Complaint but does not describe the extent of their power to act for VantagePoint. She also does not name them as defendants with respect to § 46a-60(a)(5).

### 3.    Count Twelve - Sal Mancino

In Count Twelve, Plaintiff alleges that Sal Mancino, who "was at all times relevant [to her action] the head of Stamford Hospital Human Resources," Doc. 150-2, at 2 (¶ 6), aided and abetted discriminatory and retaliatory conduct of her employers in violation of Conn. Gen. Stat. § 46a-60(a)(5), *id.*, at 61 (¶¶ 184-85).   Included in this Count are specific allegations that Mancino investigated a false complaint against Plaintiff by a technician, turning the investigation into a general probe of her employment "to set [her] up for termination;" coordinated with VantagePoint and SAS to deliver "negative findings" of that investigation to Plaintiff, thereby "dictat[ing] the timing of events in order to coordinate the discriminatory and retaliatory actions;" worked with VantagePoint and SAS in the effort to force Plaintiff to join the Physician Wellness Program;" performed a "sham investigation" with respect to Plaintiff's March 7, 2014, complaint against Coady for his sex discrimination and harassing conduct; failed to intervene when Coady demoted Plaintiff to working in the Cardiac Catheterization Lab in response to that complaint; and ridiculed Plaintiff for her concerns regarding disability discrimination (stating, "Let the games begin!!! She is now playing the ADA card.").   Doc. 150-2, at 56-61 (¶¶ 157-187).   Such allegations suffice for Plaintiff to state a plausible claim against individual employee Mancino for aiding and abetting Stamford Hospital and SAS in discriminatory conduct.

### 4.    Count Thirteen - Theresa Bowling

Plaintiff's thirteenth count includes a claim against individual Theresa Bowling, an officer of SAS at all relevant times,  for "aiding and abetting" in violation of Conn. Gen. Stat. § 46a-60(a)(5).   In that count, Plaintiff alleges that, on behalf of SAS and the Stamford Hospital Defendants, Bowling commissioned VantagePoint to conduct an investigation to find deficiencies

with Plaintiff's performance while pretending that the investigation was about the 'technician' complaint." Doc. 150-2, at 62 (¶ 157). Also, she worked with an attorney of VantagePoint to create a disciplinary memorandum to issue to Plaintiff on February 25, 2014, and she coordinated with Mancino and VantagePoint to deliver said memorandum to Plaintiff. *Id.,* (¶¶ 158-59).

Other allegations regarding actions by Bowling include, *inter alia,* that she –

• commissioned VantagePoint to help force Plaintiff to join the Physician Wellness Program

• directed VantagePoint to harass Plaintiff for documentation to substantiate her disabilities;

• took steps to diminish Plaintiff's contract right to continue maintaining privileges at Stamford Hospital in the event of the termination of her contract with SAS;

• reacted with hostility and disdain to Plaintiff's disabilities;

• removed Plaintiff as a call schedule coordinator; and

• coordinated with Mancino as "part of the collective discriminatory and retaliatory scheme" against Plaintiff.

Doc. 150-2, at 62-65 (¶¶ 161, 166-67, 170, 176, 179-80).

Viewing the facts in the light most favorable to Plaintiff, she has stated a plausible claim against Bowling for "aiding and abetting," Conn. Gen. Stat. § 46a-60(a)(5).

### 5.      Count Fourteen - Stamford Hospital

Finally, in Count Fourteen, Plaintiff pleads a claim for "aiding and abetting" under Conn. Gen. Stat. § 46a-60(a)(5) against her employer, Stamford Hospital. As one Court in this District aptly summarized:

> The law in Connecticut is clear that while an individual employee may be held liable for aiding and abetting his employer's discrimination, *an employer can not be liable for aiding and abetting its own discriminatory conduct. Bolick v. Alea Group*

> *Holdings, Ltd.*, 278 F.Supp.2d 278, 282 n. 5 (D.Conn. 2003) (citing *Jones v. Gem Chevrolet*, 166 F.Supp.2d 647, 649 n. 1 (D.Conn. 2001)). This is similar to Connecticut's intracorporate conspiracy doctrine where, if the allegations involve only one corporate entity acting through its employees, no conspiracy claim can stand.

*Canty v. Rudy's Limousine*, No. CIV.A.3:04CV1678(CFD), 2005 WL 2297410, at *2 (D. Conn. Sept. 15, 2005) (emphasis added) (internal citation omitted).

In *Canty*, the Court held that the plaintiff "may seek recovery from individual [defendant's] employees for illegally aiding and abetting discrimination against him, should he choose to file an independent lawsuit or to join those parties as defendants to this action." *Id.*, at *3. However, "[h]is remedy for the company's conduct . . . lies in the direct claims of discrimination he has raised in . . . his complaint." *Id.*

Logically, because an employer cannot, even if it were an individual (as opposed to a corporate entity), "aid and abet" itself, Plaintiff's claim in Count Fourteen fails to state a plausible claim.[16]   Furthermore, because Stamford Hospital is a corporate entity, as opposed to a "person," Plaintiff may not, in any event,  bring an action against it for aiding and abetting under Conn. Gen. Stat. § 46a-60(a)(5).  *See* discussion regarding Count Ten against VantagePoint in Part II.D.2.b.1., *supra*.

### 3.    Count Fifteen - Interference Claim under Title VII - Stamford Hospital

In the final count Plaintiff seeks to add by amendment, Plaintiff alleges that Stamford Hospital interfered with her rights protected under Title VII of the Civil Rights Act of 1964, 42

---

[16] Plaintiff has alleged definitively that Stamford Hospital was her employer.  Although she is entitled to plead in the alternative at this stage, Fed. R. Civ. P. 8(d)(3), her alternative pleading here would undermine the central thrust of her entire action – that Stamford Hospital, as her employer, wrongfully terminated her based on her sex and physical disabilities.

U.S.C. § 2000e-2, *et seq.* Specifically, "[b]y virtue of Defendant Coady's conduct," Stamford Hospital "subjected Plaintiff to a hostile work environment and failed to take action to address harassment in violation of Title VII." Doc. 150-2, at 68 (¶ 163).

As this Court has previously detailed in its Ruling on Plaintiff's second motion to amend her complaint, Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a prima facie case of discrimination under Title VII by pleading the elements of the test announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That test requires that a plaintiff show that "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination." *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999). *See also Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000); *Hill v. Rayboy Brauestein*, 467 F. Supp. 2d 336, 350 (S.D.N.Y. 2006).

Moreover, the Second Circuit has recognized a narrowly limited "interference" theory under Title VII: "where an employer has delegated one of its core duties to a third party" (*e.g.*, administration of a retirement plan). *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 377 (2d Cir. 2006) (discussing *Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054 (2d Cir.1982)). Under such circumstances, if delegated a core employer duty, the third party can incur liability under Title VII. *Id.*

In the case at bar, Plaintiff alleges that "[a]t all relevant times hereto, Defendants Stamford

Hospital and SAS were the Plaintiff's employers." Doc. 150-2, at 4 (¶ 20). Moreover, "Stamford Hospital paid Plaintiff's salary and provided all of her benefits during her employment period, directed all of her employment related activities, required her to work exclusively for the Hospital and functioned as Plaintiff's employer in every manner." *Id.*, at 36 (¶ 156). In her "Statement of Claims," Plaintiff alleges that each of her employers signed agreements in writing with her. *Id.*, at 4 (¶ 19). Also, for purposes of her attempted claim under the FMLA, she addresses Stamford Hospital as her employer. *Id.* at 42 (¶ 26).

However, to allege interference by Stamford Hospital with her Title VII rights, she now undercuts her own claim that Stamford Hospital was her employer. She thus states: "In their dealings with Plaintiff during 2014, Stamford Hospital HR representatives adopted the position that the Stamford Hospital Defendants did not employ Plaintiff" and "Stamford Hospital continues to maintain that it is not Plaintiff's employer." *Id.*, at 67 (¶ 157). In so stating, Plaintiff seeks to avoid a finding that her Count Fifteen claim for interference is futile because Stamford Hospital is her employer, not a third party to whom her employer delegated a core duty. As this Court stated in its prior Ruling on Plaintiff's last motion to amend: "Here, an employer has not delegated a core duty to a third party. Rather, two employers have each hired Plaintiff and allegedly engaged in sex discrimination in direct violation of Title VII." *Jansson v. Stamford Health, Inc.*, No. 3:16-CV-260 (CSH), 2017 WL 1289824, at *23 (D. Conn. Apr. 5, 2017). Neither is technically a third party who interfered with her Title VII rights. Rather, each is an employer covered directly under Title VII. "Consequently, a Title VII interference claim is not appropriate in this case." *Id.*

Furthermore, even if Stamford Hospital were not her employer, but actually a third party for purposes of "interference," Plaintiff has failed to specify what specific actions constituted

"interference" and/or the core employer tasks that SAS delegated, thereby making Stamford Hospital subject to liability for interference. Instead, Plaintiff makes a conclusory allegation that "SAS delegated certain core responsibilities with respect to Plaintiff to Stamford Hospital Defendants." Doc. 150-2, at 67 (¶ 158). Even though Plaintiff alleges that "Stamford Hospital Defendants paid 100% of Plaintiff's salary and benefits beginning in 2009 when Plaintiff was assigned solely to the Stamford Hospital cardiac program" and Stamford Hospital Defendants "dictated Plaintiff's hours, schedule, duties and scope of benefits," she fails to allege that Stamford Hospital performed these actions at the direction of, or *as delegated by*, SAS. *Id.*, at 67 (¶¶ 159-60). Instead, she states that Stamford Hospital violated her Title VII rights by failing to "address the harassment" of its own employee, Michael Coady. *Id.*, (¶ 163). Such allegations fail to support "interference" by an employer's delegated third party.

Once again, this Count fails to state a plausible claim. Plaintiff continues to maintain that that Defendants Stamford Hospital and SAS were both her employers at all relevant times. *Id.*, at 4 (¶ 20). Neither is a third party who interfered with her Title VII rights. None of her allegations details the delegation of a core duty to a third party. Accordingly, Plaintiff's Title VII interference claim against Stamford Hospital fails to plead sufficient facts to survive a motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, pursuant to Rule 15(a)(2), Fed. R. Civ. P., Plaintiff's Third Motion to Amend Complaint [Doc. 150] is GRANTED IN PART and DENIED IN PART. Plaintiff must file a final "Revised Amended Complaint," *consistent with the terms of this Ruling.* Accordingly, she may add only the following three claims to her previously operative Revised Amended Complaint" [Doc. 153] :

- **Counts Eleven, Twelve, and Thirteen** - CFEPA claim (Conn. Gen. Stat. § 46a-60(a)(5)) against individual defendants Michael Coady, Sal Mancino, and Theresa Bowling, alleging that they "aided, abetted, incited, compelled and coerced the discriminatory and retaliatory conduct" of Plaintiff's alleged employers, the Stamford Hospital Defendants and SAS.

Plaintiff may **not**, however, include the following Counts (as drafted), in her "Revised Amended Complaint," which were insufficiently pled and/or failed to state a claim:

- **Count Nine** - FMLA claim (29 U.S.C. § 2617 et seq.) against Stamford Hospital for allegedly retaliating against Plaintiff for taking a medical leave of one day due to her daughter's medical condition;

- **Count Ten** - CFEPA claim (Conn. Gen. Stat. § 46a-60(a)(5)) against VantagePoint, alleging it "aided and abetted the discriminatory and retaliatory conduct of the Stamford Hospital Defendants and Defendant SAS based on Plaintiff's disabilities and sex and due to Plaintiff's voicing of her concerns of discrimination in violation of the CFEPA.;

- **Count Fourteen** - CFEPA claim (Conn. Gen. Stat. § 46a-60(a)(5)) against defendant employer Stamford Hospital for aiding and abetting discriminatory and retaliatory conduct toward Plaintiff; and

- **Count Fifteen** - Interference under Title VII (42 U.S.C. § 2000e, *et seq.*) against Stamford Hospital.

Plaintiff must file and serve her Amended Complaint, in compliance with the instructions set forth in this Ruling, on or before Friday, **April 27, 2018**. Upon service and filing of the Amended Complaint, that pleading will become the operative complaint in this action. To avoid further delay and confusion, the period for amendment of the pleadings is hereby CLOSED as of

entry of this Ruling.

On or before Friday, **May 11, 2018**, the parties must meet and/or confer and file a joint amended Rule 26(f) Report, reflecting the state of present discovery and proposing any revised case deadlines they believe are necessary in light of this Ruling.

The following defendants are hereby DISMISSED from this action: **VantagePoint, LLC** and **Sharon Kiely.** The Clerk is directed to terminate these defendants immediately. If so advised, the parties may jointly move for a referral to a Magistrate Judge for a settlement conference.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
March 30, 2018

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge