UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAMANTHA JANSSON,

        Plaintiff,

v.

STAMFORD HEALTH, INC. d/b/a STAMFORD HOSPITAL, STAMFORD HOSPITAL, STAMFORD ANESTHESIOLOGY SERVICES, P.C., VANTAGEPOINT LLC d/b/a VANTAGEPOINT HEALTHCARE ADVISORS, MICHAEL COADY, SHARON KIELY, SAL MANCINO and THERESA BOWLING,

        Defendants.

Civil Action No.
No. 3:16-cv-260 (CSH)

APRIL 11, 2018

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION [DOC. 211]

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

In this employment discrimination action, Plaintiff Samantha Jansson alleges that she was wrongfully terminated by her two former employers, Stamford Hospital (including Stamford Health, Inc., doing business as Stamford Hospital) and Stamford Anesthesiology Services P.C. ("SAS"). The Court has recounted the facts of the case in its previous rulings, familiarity with which is assumed. Recently, the Court granted in part and denied in part Plaintiff's third motion to amend her complaint. *Jansson v. Stamford Health, Inc.*, No. 3:16-CV-260 (CSH), 2018 WL 1557250, at *1 (D. Conn. Mar. 30, 2018). Plaintiff now moves for reconsideration of that ruling on two Counts of her Complaint. The Ruling resolves that motion.

1

## II. DISCUSSION

"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)(citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y.1988)).

In the case at bar, Plaintiff asserts that the Court failed to take into account the general provisions of the Connecticut Commission on Human Rights and Opportunities ("CHCRO"), which include a definition of "person" that should be applied in the CFEPA provision at Conn. Gen. Stat. § 46a-60(a)(5).[1] That definition states:

> (14) "Person" means one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, receivers and the state and all political subdivisions and agencies thereof;

Conn. Gen. Stat. § 46a-51(14). Plaintiff argues that in light of the application of this general definition to the provision at issue, the Court's ruling, dismissing as futile her proposed Counts Ten and Fourteen, may be altered.

The Court examines each of these dismissed counts in light of this provision Plaintiff now presents.

### A. Count Ten - Aiding and Abetting - CFEPA - VantagePoint

Plaintiff seeks to assert a claim against VantagePoint under former Conn. Gen. Stat. § 46a-60

---

[1] Plaintiff cites the statute as Conn. Gen. § 46a-60(a)(5). That provision was in effect at the time she filed her original complaint but has since been renamed as § 46a-60(b)(5) in an amendment effective October 1, 2017.

(a)(5), which provides:

> It shall be a discriminatory practice in violation of this section: . . .
>
> For any *person*, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so.

Conn. Gen. Stat. § 46a-60(a)(5) (emphasis added).[2]

Plaintiff asserts that the CHRO has defined a "person" as "one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, receivers and the state and all political subdivisions and agencies thereof." Conn. Gen. Stat. § 46a-51. This definition, "[a]s used in section 4a-60 and this chapter," applies to the CFEPA.[3] *Id.* Accordingly, Plaintiff states that her tenth count against corporate entity VantagePoint is proper, even though it is not against an individual.

The general definitions set forth in § 46a-51 of the CHRO have evolved with judicial interpretation of their legislative meaning.[4] In *Perodeau v. City of Hartford*, 259 Conn. 729, 744, 792 A.2d 752, 761 (2002), the Connecticut Supreme Court concluded that § 46a-60 (a)(1) does not impose liability on individual employees. Therefore, an "employer," who may be, *inter alia*, a "person" (with three or more employees) under former § 46a-60 (a)(1) may be held liable. However,

---

[2] *See* n. 1, *supra*.

[3] Conn. Gen. Stat. § 4a-60a relates to "Provisions re nondiscrimination on the basis of sexual orientation required in awarding agency, municipal public works and quasi-public agency project contracts," so is inapposite. The phrase "this chapter," however, includes the CFEPA.

[4] Such interpretation may be necessary because the CHRO's general definitions may create a certain degree of ambiguity in their application. For example, examining the definitions on their face, if a "person" includes a partnership or corporation, an "employee" may also be a corporate entity because an employee is defined as "any *person* employed by an employer." Conn. Gen. Stat. §§ 46a-51(9), (14). This Court voices no opinion on this matter.

3

an individual who is an employee, and even the employer's "agent," is not liable under that provision.

With respect to "person" in former § 46a-60(a)(5), the parties' prior briefs presented no case law directly interpreting the applicable scope of the definition of "person." Moreover, the case law presented speaks to this provision as one giving rise to individuals' liability.[5] In particular, Connecticut case law holds that individual employees are not liable for discriminatory practices under § 46a-60(a)(1), but are liable under §§ 46a-60(a)(4) and (5) because these sections specifically mention "persons" as potentially liable. *Perodeau*, 259 Conn. at 737-38. Moreover, treatises distinguish between an employer's liability under § 46a-60(a)(1) and an individual's liability under § 46a-60(a)(5). *See, e.g.*, "Aiding and Abetting," 14 Conn. Prac., Employment Law § 7:15 ("[A]ccording to statutory construction, where the persons clause is omitted from § 46a-60(a)(1) but included in § 46a-60(a)(5), the legislature intended to expose *individuals* to liability *under § 46a-60(a)(5)* but *not under § 46a-60(a)(1)*)" (emphasis added)).

The case at bar presented the unusual circumstance where a third-party corporate entity allegedly "aided and abetted" discrimination by the employers during its "involve[ment] in providing HR [human resources] and management services to them." Doc. 150-2, at 3. The

---

[5] *See, e.g.*, *Cintron v. Atticus Bakery, LLC*, 242 F. Supp. 3d 94, 107 (D. Conn. 2017) ("[A] plaintiff may seek recovery from individual . . . employees for illegally aiding and abetting discrimination against him, should he choose to file an independent lawsuit or to join those parties as defendants to [his or her] action.") (quoting *Farrar v. Town Of Stratford*, 537 F. Supp. 2d 332, 356 (D. Conn. 2008)). *See also, e.g.*, *Spiotti v. Town of Wolcott*, No. 3:04-cv-01442 (CFD), 2008 WL 596175, at *1 n. 1 (D. Conn. Feb. 20, 2008) ("Individual liability remains possible under Conn. Gen. Stat. § 46a-60(a)(5) (aiding and abetting) . . ."); *Edwards v. New Opportunities Inc.*, No. 3:05-cv-1238 (JCH), 2006 WL 1668020, at *2 (D. Conn. June 16, 2006) ("[I]ndividual defendants, even if not employers, may be liable for violations of Connecticut General Statutes section[ ] 46a-60(a)(5).").

discriminatory aiding and abetting allegedly occurred through the actions of the third-party's employees as they performed these HR tasks to assist Plaintiff's employers.

Upon review of Plaintiff's newly presented statutory provision, incorporating the general CHRO definition of "person" to include corporate entities in the aiding and abetting provision of former § 46a-60(a)(5), which is currently subsection (b)(5), the Court finds that VantagePoint's composition as a corporate entity does not in and of itself render Plaintiff's Count Ten "futile," as that term is used in *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Alternatively, the Court noted in its prior ruling that the allegations regarding VantagePoint employees failed to indicate the extent to which these parties were warranted to act on behalf of VantagePoint. Doc. 210, at 25-25 n. 15. In other words, VantagePoint employees Sue Prior and Benjamin Albert were described as "representatives" without further facts to demonstrate that VantagePoint granted them authority to take the alleged discriminatory actions against Plaintiff.

In this motion, however, Plaintiff now submits that it can be "reasonably infer[red]" that VantagePoint employees Sue Prior and Albert Benjamin had such authority because they "provid[ed] HR and management services to medical practices," so that "higher level employees would be working with the clients." Doc. 211-1, at 3. Plaintiff alleges that Sue Prior was "a VantagePoint representative" who acted on behalf of the Stamford Hospital Defendants and SAS. Doc. 150-2*,* at 20 (¶84). She also asserts that Attorney Benjamin Albert was "an employee of VantagePoint HealthCare Advisors." *Id.*, at 11 (¶ 45). Based on Prior's and Albert's activities in the context of Human Resources, Plaintiff states that VantagePoint recognized them as its representatives in assisting Stamford Hospital and SAS. In view of these representations and allegations, the Court reads the Complaint liberally to find that Prior and Albert allegedly acted for VantagePoint and

participated in some of the meetings, investigations, and decisions that ultimately led to Plaintiff's allegedly discriminatory termination.

In light of the newly presented legal authorities, and accepting all factual claims in the complaint as true and drawing all reasonable inferences in the Plaintiff's favor, *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135 n.11 (2d Cir. 2015), the Court finds that Plaintiff may include Count Ten for aiding and abetting against VantagePoint in her Revised Amended Complaint.

### B. Count Fourteen - Aiding and Abetting - CFEPA - Stamford Hospital

As discussed *supra*, Plaintiff now points to Conn. Gen. Stat. § 46a-51 to support her argument that the legislature intended to incorporate its general CHRO definition of "person" to include corporate entities in former § 46a-60(a)(5), the aiding and abetting provision. Accepting that an aiding and abetting claim against a corporate entity may proceed, Plaintiff's claim is not excluded on the ground that it is a corporate entity.

The Court had also found that Count Fourteen may be problematic because "an individual employee may be held liable for aiding and abetting his employer's discrimination, but an employer cannot be liable for aiding and abetting its own discriminatory conduct." *Farrar v. Town of Stratford*, 537 F.Supp.2d 332, 356 (D.Conn. 2008)(citation and internal quotation marks omitted), *aff'd*, F. App'x 47 (2d Cir. 2010). "Thus, a plaintiff may seek recovery from individual . . . employees for illegally aiding and abetting discrimination against him, should he choose to file an independent lawsuit or to join those parties as defendants to this action. His remedy for the [employer's] conduct, however, lies in the direct claims of discrimination he has raised in . . . his complaint. [The employer] cannot have discriminated against him and, at the same time, aided and abetted itself in discrimination against him." *Id.* at 356-57 (citation omitted).

If it is accepted that Stamford Hospital was the *employer* of Plaintiff, then it follows that Stamford Hospital cannot have discriminated against the Plaintiff and, at the same time, aided and abetted itself in discriminating against her. Plaintiff staunchly alleges that Stamford Hospital was her employer and that it discriminated against her.[6]

Therefore, Plaintiff cannot as a matter of law allege that Stamford Hospital aided and abetted discrimination with its own employees, Mancino and Coady. However, to the extent that Plaintiff claims that Stamford Hospital aided and abetted *her employer SAS* in discriminating against her, that claim is now plausible. Moreover, the other individual whose conduct Plaintiff asserts gives rise to Plaintiff's claim in Count Fourteen is Sharon Kiely, Chief Medical Officer of Stamford Hospital, who allegedly interacted with Theresa Bowling of SAS to take discriminatory measures against Plaintiff on a number of occasions. As to these allegations – aiding and abetting discriminatory practices *of SAS* – this claim states a plausible claim. Reading the Complaint in the light most favorable to Plaintiff, Plaintiff may include a claim for "aiding and abetting" against Stamford Hospital for assisting employer SAS to engage in discriminatory and retaliatory conduct against Plaintiff in violation of the CFEPA. Doc. 150-2, at 66 (¶ 193). Count Fourteen may be included in Plaintiff's Revised Amended Complaint.

Plaintiff is put on notice that because this claim is contingent upon her success in proving discrimination *by employer SAS*, should that claim against SAS fail, this "aiding and abetting claim" will no longer be viable and will automatically be subject to dismissal. *See, e.g., Jones v. Gem*

---

[6] In fact, Plaintiff expressly "realleges and incorporates by reference" all of the paragraphs in which she alleges that Stamford Hospital was, at all relevant times, her employer, Doc. 150-2, at 66 (¶¶ 1-156), and as such, discriminated against her based on sex and physical disabilities. *See, e.g., id.*, at 18 (¶ 73), at 39 (¶ 158), at 40 (¶ 158), at 40 (¶ 157).

7

*Chevrolet,* 166 F. Supp. 2d 647, 651 (D. Conn. 2001). Plaintiff is left to her proof regarding discrimination by SAS. Plaintiff is also left to her proof, and the ultimate resolution, of the factual and legal identity of Plaintiff's *employer* – SAS and/or Stamford Hospital – within the context of the governing statutes.

## C. CHRO Application to File An Amicus Curiae Memorandum

In seeking leave to file an amicus curiae memorandum, the CHRO has stated that its sole interest in filing such a brief is the "interpretation of Conn. Gen. Stat. § 46a-60(a)(5)," specifically that "Vantage Point, as a corporate entity, is not a covered entity under Conn. Gen. Stat. § 46a-60(a)(5)." Doc. 212, at 4. The CHRO has clarified that its interest in seeking to file a brief is "narrowly confined" to assisting the Court with that interpretation; and "CHRO's position is neutral regarding any other issues presented." Doc. 212, at 1 n. 1. The Court notes that the CHRO mentions only "Conn. Gen. Stat. § 46a-60(a)(5)," but that provision was replaced by the legislature as § 46a-60(b)(5) when the statute was amended in 2017. Given the date her action arose, Plaintiff cited this provision as "§ 46a-60(a)(5)" so that the CHRO may have mirrored her pre-amendment citation with reference to her case. *See* Doc. 150-2, at 53 (¶ 161) ("Defendant VantagePoint's conduct gives rise to an aiding and abetting claim under § 46a-60(a)(5) of the Connecticut General Statutes.").

In any event, because the Court herein has granted reconsideration in this Ruling and incorporated "person" to include a corporate entity in former § 46a-60(a)(5) (prohibiting discriminatory aiding and abetting), pursuant to Conn. Gen. Stat. § 46a-51(14), the Court grants the CHRO's motion [Doc. 212] to file such a brief on the docket if the CHRO needs to further clarify its position on § 46a-60(a)(5) following this ruling.

8

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for reconsideration [Doc. 211] and grants leave for Plaintiff to add Counts Ten and Fourteen into her revised amended complaint. Plaintiff must file and serve her Revised Amended Complaint on or before **April 27, 2018.** Due to Count Ten, the Clerk is instructed to reinstate VantagePoint as a defendant on the case docket in this action.

The foregoing is So Ordered.

Dated: New Haven, Connecticut
April 11, 2018

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge