UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMANTHA JANSSON,<br><br>        Plaintiff,<br>v.<br><br>STAMFORD HEALTH, INC. d/b/a STAMFORD HOSPITAL, STAMFORD HOSPITAL, STAMFORD ANESTHESIOLOGY SERVICES, P.C., VANTAGEPOINT LLC d/b/a VANTAGEPOINT HEALTHCARE ADVISORS, MICHAEL COADY, SHARON KIELY, SAL MANCINO and THERESA BOWLING,<br><br>        Defendants. | Civil Action No.<br>No. 3:16-cv-260 (CSH)<br><br><br><br>MAY 24, 2018 |

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION [DOC. 237]

**HAIGHT, Senior District Judge:**

Plaintiff has filed a Motion for Reconsideration [Doc. 237] of this Court's May 7, 2018 Ruling [Doc. 235] ("the May 7 Ruling"), which resolved Plaintiff's earlier motion to compel discovery in the form of production of documents [Doc. 190]. Defendants need not respond to Plaintiff's motion for reconsideration. For the reasons that follow, the Court will deny that motion and adhere to the May 7 Ruling.

The principal issue decided by the May 7 Ruling was generated by the contention of Defendant Stamford Hospital that a sizable number of documents sought by Plaintiff in discovery were protected from disclosure by the "common defense rule" (also referred to as a "joint defense agreement" or "JDA"). Counsel for Stamford Hospital sought to implement that claimed protection

1

by filing a "privilege log," in purported obedience to Local Civil Rule 26(e). The Court's May 7 Ruling reviewed Second Circuit authority on the point, held that Stamford Hospital's privilege log was deficient, in that (a) it failed to demonstrate sufficiently the existence of a common defense or JDA, and (b) the descriptions of the particular documents sought to be protected did not justify a protected status. The May 7 Ruling concluded by granting leave to Stamford Hospital and co-Defendant Stamford Anesthesiology Services ("SAS") (the other party to the proclaimed JDA) to "submit additional papers in support of a claim that certain particular documents . . . are protected by an evidentiary privilege." *See* Slip Opinion (2018 WL 2095169, at *14 (D. Conn. May 7, 2018)).

Plaintiff's motion for reconsideration focuses upon the Ruling's concluding grant of time to allow Defendants to attempt to show particular documents are privileged. Plaintiff contends that the Court, in granting that leave, acted improvidently or out of ignorance. The Court should, in Plaintiff's view, direct production forthwith of all documents referred to in the prior motion papers.

Local Civil Rule 7(c)1 of this Court provides: "Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."

In the case at bar, the May 7 Ruling is "the initial decision or order." On the particular issue Plaintiff asks the Court to reconsider, the initial decision said:

> On the present state of the record, Plaintiff Jansson would be entitled to an Order compelling production of every document referred to in her motion to compel. The Court has in mind, however, that the attorney-client privilege exists for the benefit of the client, not the attorney. When the issue arises in litigation, a party's failure to demonstrate its entitlement to the protection of a privilege is most likely ascribable to the attorney, not the client, but the client suffers

2

the prejudice of a disclosure that should not have been made.

2018 WL 2095169, at *14. Those circumstances prompted me, in what I considered to be in furtherance of the justice of the cause, to allow Defendants some time to prove (if they could) the existence of a JDA, and also to prove (if they could) that a particular document fell within the boundaries of the resulting privilege.

Plaintiff regards any grant of time for that purpose as mistaken and unjust. She files her motion for reconsideration "because an undisputed issue may have been overlooked by the Court and to prevent manifest injustice." Notice of Motion [Doc. 237], at 1.

It appears from Plaintiff's brief on the motion [Doc. 237-1] at 2-3 that the "undisputed issue" referred to in the notice of motion is in reality an "undisputed inconsistency in the Defendants' positions." That inconsistency arises out of a discussion Plaintiff's attorney, Heena Kapadia, had with Stamford Hospital's attorney, Justin Theriault, in which Mr. Theriault said that the institutional clients had entered into a joint defense agreement, and a subsequent discussion Attorney Kapadia had with SAS's attorney, Brian Tims, in which Mr. Tims said he was not aware of a joint defense agreement.

As for the justice of the cause, Plaintiff is critical of defense counsel's conduct of the case; her brief at 3 asks

> that the Court reconsider the decision to allow Defendants additional time to produce the joint defense agreement or otherwise substantiate the privilege because the circumstances here do not warrant this remedy. Plaintiff made it absolutely clear in her Motion to Compel and for In Camera Inspection papers that Defendants' failure to produce evidence of a joint defense agreement is problematic. Plaintiff explained in exhaustive detail the glaring deficiencies in their position and their failure to produce any evidence. Plaintiff provided a complete analysis of the issues and a clear roadmap in her

> papers as to what the Defendants were required to do. Defendants
> were on notice that they had to provide evidence to substantiate their
> claims of privilege. They *chose* not to do so.

Doc. 237-1, at 3 (emphasis in original).

These two issues, viewed separately or in combination, do nothing to support reconsideration of the May 7 Ruling.

As for the perceived inconsistency in the defense attorneys' remarks to plaintiff's attorney, I accept for present purposes Ms. Kapadia's representations that Stamford Hospital's Mr. Theriault told her the Hospital and SAS had entered into a joint defense agreement, and SAS's Mr. Tims told her (in a separate conversation) that he was not aware of a JDA between those parties. I also accept Ms. Kapadia's further representations that she asked opposing counsel for a copy of any existing JDA and none has been forthcoming. Those circumstances prompt further inquiry, but they fall short of demonstrating that Stamford Hospital is precluded as a matter of law from claiming the protection of a JDA. The Hospital professes throughout its motion papers that a JDA with SAS exists, and protects many documents from production to Plaintiff in discovery. Stamford Hospital, which claims the benefit of an evidentiary privilege, bears the burden of proving a JDA exists; and the seeming lack of awareness of a JDA on the part of the attorney for SAS (the Hospital's purported common defense partner) may furnish grist for the cross-examination mills of Plaintiff's attorney, if the existence *vel non* of a JDA comes to be litigated further. But that is for a later date. These circumstances do not implicate in any way the contention Plaintiff makes in her motion for reconsideration of the May 7 Ruling, namely, that the Court should not have granted Stamford Hospital and SAS a limited amount of additional time within which to attempt to demonstrate an entitlement to an evidentiary privilege.

Plaintiff's second ground for reconsideration, based upon a perceived injustice, is that the Court erred in allowing "Defendants additional time to produce the joint defense agreement or otherwise substantiate the privilege because the circumstances here do not warrant this remedy." Doc. 237-1, at 3. The quoted paragraph following that assertion, stripped of rhetoric, argues *au fond* that Plaintiff's counsel explained to Defendants' counsel the deficiencies of their position with such acuity and skill that Defendants should have cured the deficiencies at once or abandoned a claim of privilege and simply handed over all the documents.

That paragraph's concluding sentence – "They *chose* not to do so" – really means that Defendants chose not to accept the opinions of Plaintiff's attorney and conform their conduct accordingly. Neither Defendants nor their attorneys were required to accept the views of an adversary, and in fact they did not do so. During the course of conferences between counsel, the Stamford Hospital rested content with its privilege log. Subsequently the Court, adjudicating Plaintiff's motion to compel, found that the privilege log was deficient, in the ways described in the May 7 Ruling. Those views the Defendants must perforce accept (at least pending a successful appeal). The Court exercised its discretion to grant Defendants an opportunity to attempt to cure those deficiencies, its reasoning being that if certain documents fell within a recognized privilege, the Defendants were entitled to the protection of that privilege and Plaintiff was not entitled to read the documents. It is something of a stretch for Plaintiff to argue that this resolution works a "manifest injustice." Trial courts in civil litigation not infrequently couple a decision dismissing or striking a pleading with leave to replead it.

That is particularly appropriate in this case, where the possibility of a common defense privilege or joint defense agreement hardly comes as a surprise. Plaintiff has contended throughout

5

that at the pertinent times she was an employee of both SAS and Stamford Hospital; thus the Joint Rule 26(f) Report [Doc. 236] recites at ¶ IV.1.: "Plaintiff began her employment with Stamford Anesthesiology Services, P.C. . . . on or about November 1, 2007. The parties dispute whether Plaintiff was also employed by the Stamford Hospital Defendants." Whatever may be the answer to that question of employment status, it is common ground that executives and legal representatives of Stamford Hospital and SAS were in contact with each other during events culminating in Plaintiff's termination and her filing of a complaint naming Stamford Hospital and SAS as co-defendants and alleging claims against each of them for discrimination and retaliation.

While the case would seem to be a fertile field for the planting of a joint defense agreement, the existence of a JDA, and the application of a JDA found to exist to particular documents, pose questions which are fair grounds for litigation, which must be decided by the Court on a full record. The Court fashioned its May 7 Ruling to ensure the creation of that record. Nothing in the May 7 Ruling or this Ruling should be interpreted as an expression or intimation by the Court about how those questions should ultimately be resolved.

Plaintiff's Motion for Reconsideration [Doc. 237] is DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut
         May 24, 2018

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge